*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
EAGLE SYSTEM, INC., :
: Civil Action No.: 18-17062 (FLW)
                Plaintiff, :
: **OPINION**
  vs. :
:
MOD-PAC CORP., John Does 1 – 10 :
(fictitious), and ABC Corps 1 – 10 :
(fictitious), :
:
                Defendants. :
_____:

**<u>WOLFSON, Chief Judge</u>:**

      This matter comes before the Court on defendant Mod-Pac Corp.'s ("Defendant" or "Mod-Pac") motion to dismiss the Complaint filed by plaintiff Eagle System, Inc. ("Plaintiff" or "Eagle") pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), (6), and (7) or, in the alternative, to transfer the case under 28 U.S.C. § 1631. Plaintiff's claims arise out of Defendant's alleged misuse of certain software contained in printing equipment sold to Defendant, in breach of the parties' contract. Because the Court concludes that personal jurisdiction over Mod-Pac is lacking, but in lieu of dismissal, the Court transfers this matter to the United States District Court for the Western District of New York under 28 U.S.C. § 1631.

1

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Eagle is a New Jersey corporation with its principal place of business in Ocean, New Jersey. Complaint ("Compl."), ¶ 1. Eagle sells, manufactures, installs and distributes printing press modules. *Id.* at ¶ 6. In its Complaint, Eagle avers that Mod-Pac was a New York corporation, with its principal place of business in Buffalo, New York.[2] *Id.* at ¶ 2. Mod-Pac is in the business of printing packaging. *Id.* at ¶ 7.

Eagle alleges that, on July 10, 2015, Eagle and Mod-Pac entered into a contract that included the sale of a module, the installation of the equipment, a limited license for Mod-Pac to use certain software on the module, and a one-year warranty. *Id.* at ¶ 8; Agreement dated July 10, 2015, pp. 7 – 8. Eagle further alleges that, on November 6, 2018, the proprietary software in the module, then located in Mod-Pac's facility in Buffalo, New York, was accessed and downloaded in violation of the limited license. Compl., ¶¶ 3, 9 – 13.

On December 11, 2018, Eagle filed suit, alleging breach of contract, tortious interference, conversion and misappropriation of trade secrets, seeking $25,000 in liquidated damages under the contract and other damages. *Id.* at ¶¶ 14 – 38. On January 25, 2019, Mod-Pac moved to dismiss or, in the alternative, to transfer. Eagle filed its opposition on February 5, 2019. While Eagle opposes dismissal, it argues that, alternatively, in the event the Court finds personal jurisdiction is

---

[1] As discussed below, Eagle has the burden of establishing this Court's personal jurisdiction and must, at least, make a *prima facie* showing. On this motion, Eagle's "allegations [are] taken as true and all factual disputes [are] drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

[2] Mod-Pac asserts that, after Eagle filed this lawsuit, but before Mod-Pac moved to dismiss or transfer, Mod-Pac reorganized as a Delaware corporation with its principal place of business remaining in New York. Certification of Daniel G. Keane, ¶¶ 2, 3. This reorganization, however, is irrelevant to the question of personal jurisdiction.

lacking, this matter should be transferred to the United States District Court for the Western District of New York.

## II. LEGAL STANDARD

"If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Therefore, because Mod-Pac has raised the issue of personal jurisdiction, Eagle bears the burden of showing that Mod-Pac is subject to the personal jurisdiction of this Court.

"However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence.... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id.* at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Because New Jersey's long-arm statute extends to the constitutional limits, *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F.Supp.2d 332,

334 (D.N.J. 2000), the question of whether Mod-Pac is subject to personal jurisdiction in this matter turns on the limits imposed by the Due Process Clause of the Fourteenth Amendment. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction[3] and 'specific' (sometimes called 'case-linked') jurisdiction.[4]" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In order for there to be specific jurisdiction under the Due Process Clause, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919) (alteration in original). In other words, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus

---

[3] Eagle does not explicitly contend that general jurisdiction is applicable in this case. Indeed, general jurisdiction is only available where a defendant is at home, and for a corporation, that usually means where the corporation is incorporated or has its principal place of business. *Daimler v. Bauman*, 571 U.S. 117, 137 (2014). Significantly, Mod-Pac is neither incorporated nor has its principal place of business in New Jersey. Nevertheless, it appears that Eagle argues that the availability of Mod-Pac's products on www.modpac.com, www.shopmodpac.com, www.myweddingbasics.com and www.partybasics.com, *see* Certification of Mike King ("King Cert."), ¶¶ 21 – 24, as well as the products' labeling, subjects Mod-Pac to this Court's general jurisdiction. This argument is clearly incorrect; the availability of Mod-Pac's products online in no way renders Mod-Pac "at home" in New Jersey, as that term is defined under *Daimler*. Accordingly, this Court does not have general jurisdiction over Mod-Pac.

[4] In order for a court to exercise specific jurisdiction, the plaintiff's claims must arise out of the defendant's contacts with the forum. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80. In this case, Mod-Pac's websites and labeling, as well as Eagle's assertion that Mod-Pac "routinely does business with customers in New Jersey," King Cert., ¶ 25, also cannot be the bases for this Court to exercise specific jurisdiction, because none of Eagle's claims asserted here are related to Mod-Pac's online retail activities. Rather, these claims arise out of a contractual relationship between Eagle and Mod-Pac.

4

invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Therefore, "[t]he inquiry [into] whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (some internal quotation marks omitted).

The Third Circuit has explained that "there are different considerations in analyzing [specific] jurisdiction over contract claims and over certain tort claims." *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001). Specifically, "[i]n determining jurisdiction over a breach of contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing," *id.* (citing *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)), whereas, with respect to intentional tort claims, courts "appl[y] [the] *Calder* [*v. Jones*, 465 U.S. 783 (1984)] . . . 'effects test' . . . to show that: (1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Id.* at 258 (emphasis and some internal quotation marks deleted).

### III. <u>DISCUSSION</u>

*A. Specific Jurisdiction*

Eagle's arguments in support of finding specific jurisdiction involve following contacts: Mod-Pac's relationship with Eagle, including their contract and several phone calls, *see* Certification of Mike King, ¶¶ 2 – 3. At the outset, I note that, in its argument for specific

jurisdiction, Eagle does not distinguish between its contract claim and its intentional tort claims.[5] That distinction is important, however, because, under *Remick*, specific jurisdiction analysis is different for these two types of claims.[6] Therefore, the Court must distinguish between them, and I turn first to the contract claim.

Eagle argues that specific jurisdiction exists because Mod-Pac has a contractual relationship with Eagle. For support, Eagle cites *Burger King* for the proposition that physical presence in a state is not necessary for specific jurisdiction, and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1985), for the proposition that "foreseeability . . . is critical to due process analysis." Seemingly, Eagle references these cases to argue that the contract, by itself, created a course of dealing sufficient to show purposeful availment by Mod-Pac of Eagle in New Jersey such that personal jurisdiction would exist. That argument is plainly incorrect. Indeed, purchasing merchandise from a seller is not, by itself, enough to subject the buyer to specific jurisdiction in the forum of the seller. *See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000); *see also Porthault NA LLC v. Cadeau Exp. Inc.*, No. 09–4431, 2009 WL 4573598, at *4 (D.N.J. Dec. 2, 2009) ("For minimum contacts to exist, there must be something more. For example, rather than being merely a passive purchaser, minimum contacts may exist where a buyer vigorously negotiates, perhaps dictates the contract terms, inspects production facilities, and otherwise departs from the passive buyer role." (internal quotation marks and citation omitted)).

---

[5] Tellingly, Eagle's jurisdictional argument is contained to approximately two pages in its brief.

[6] Though Eagle also pleads a statutory misappropriation of trade secrets claim, this Court treats that claim as an intentional tort for purposes of specific jurisdiction.

Instead, the Third Circuit has instructed district courts to consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 255-56. Under that framework, Eagle has not alleged that representatives of Mod-Pac travelled to New Jersey to negotiate the contract or even directed any communications into New Jersey to do so. To the contrary, the terms of the contract actually required Eagle employees to install the module in New York and, under the warranty, to repair the module, if necessary, in New York, without requiring Mod-Pac to conduct any activities in New Jersey. With respect to the "parties' actual course of dealing," Eagle, nevertheless, argues jurisdiction exists because, after the signing of the contract, and before the alleged downloading of the software, representatives of Mod-Pac made two calls to a former employee of Eagle and made one, unanswered call to the cell phone of Eagle's principal. However, these few calls do not establish purposeful availment, because communications by a nonresident defendant to a plaintiff residing in the forum are insufficient contacts for personal jurisdiction. *See Marten v. Godwin*, 499 F.3d 290, 298-99 (3d Cir. 2007). Therefore, Eagle has not carried its burden in showing that the totality of the circumstances establishes specific jurisdiction over Mod-Pac for the breach of contract claim.

With respect to the claims for conversion, tortious interference and misappropriation of trade secrets, Eagle similarly argues that its contractual relationship with Mod-Pac created minimum contacts to allow this Court to exercise specific jurisdiction over Mod-Pac. I disagree. As I have indicated, *supra*, the analysis for specific jurisdiction related to intentional torts centers on the three-element *Calder* effects test. *Remick*, 238 F.3d at 258. In applying that test, the Court concludes that Eagle cannot meet the third element, that the defendant expressly aimed his tortious conduct at the forum. In particular, Eagle only alleges that Mod-Pac or its agents downloaded the

7

software in New York, without alleging any facts by which this activity targeted New Jersey. Indeed, Eagle has not alleged, as a part of its tortious interference or misappropriation of trade secrets claims, that Mod-Pac directed any actions towards New Jersey.

*B. Transfer*

After finding a lack of personal jurisdiction, the Court could dismiss under Fed. R. Civ. P. 12(b)(3). However, under 28 U.S.C. § 1631, the Court "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought." In lieu of dismissal, Eagle has requested that this Court transfer this matter to the United States District Court for the Western District of New York. Indeed, Mod-Pac would be subject to personal jurisdiction in that district, as its principal place of business is in Buffalo, New York. *See Daimler v. Bauman*, 571 U.S. 117, 137 (2014). Pursuant to § 1631, I find that a transfer to the Western District of New York is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, and in lieu of dismissal, this matter is transferred to the United States District Court for the Western District of New York.

Date: June 19, 2019

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge